IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL M. HOWARD, | § | |
|     Plaintiff, | § | |
| v. | § | Civil Action No. 3:21-CV-0921-K (BH) |
| | § | |
| OFFICE OF THE SPECIAL | § | |
| DEPUTY RECEIVER, | § | |
|     Defendant. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court are *Defendant Lumbermens Mutual Casualty Company's … Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)-(2) and Motion to Abate and Dismiss*, filed on June 24, 2021 (doc. 18), and *Defendant Office of the Special Deputy Receiver's … Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)-(2) and Motion to Abate and Dismiss*, filed on June 24, 2021 (doc. 19). Based on the relevant filings and applicable law, the plaintiff's responses to the motions are liberally construed as motions for leave to amend his complaint and **GRANTED;** the motions to dismiss should be **GRANTED**, and the motions to abate should be **DENIED as moot**.

## I.     BACKGROUND

This *pro se* action arises from the denial of Samuel M. Howard's (Plaintiff) insurance claim for an unpaid 1995 settlement with his former employer by liquidated insolvent Illinois insurer, Lumbermens Mutual Casualty Company (Insurer), the liquidation of which is being overseen by the Illinois Office of the Special Deputy Receiver (Receiver) (Defendants). (*See* doc. 3 at 1, 17; doc. 10 at 1; doc. 17 at 1; doc. 21 at 6, 9; doc. 24 at 3.)[2]

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

On December 6, 1992, a month after he started working as a diesel mechanic at Grayline Tours of Dallas/Ft. Worth (Employer 1), Plaintiff injured his back in a work accident. (*See* doc. 3 at 13, 21.) Three weeks later, on December 27, 1992, he started working as a limo mechanic at Executive Transportation Services (Employer 2). (*See id.* at 55, 58-59; doc. 7 at 5; doc. 21 at 6-7.) Insurer was allegedly the insurance carrier for both employers. (*See* doc. 3 at 1, 17; doc. 8 at 2;[3] doc. 10 at 1; doc. 21 at 6, 9.) Plaintiff was fired from both companies on January 11, 1993, but did not receive worker's compensation, unemployment benefits, or reimbursement for his medical bills. (*See* doc. 3 at 21, 27; doc. 8 at 2, 5, 9; doc. 21 at 2-3, 6-7.) He also claims that the owner of Employer 2 failed to pay him $548.00 for "repair and labor." (*See* doc. 3 at 55, 58-59; doc. 8 at 2, 5; doc. 21 at 6-7.)

Plaintiff sued Employer 2 on June 7, 1993, in Dallas County Court at Law No. 1 for damages. (*See* doc. 3 at 4-5.) On August 8, 1995, the parties agreed to settle all claims arising out of Plaintiff's December 6, 1992 injury, including "bad faith, DTPA, 21.21 Insurance Code violations or any other claim in common law or statute," for $21,000.00, to be paid no later than November 15, 1996. (*See id.*) Employer 2 "went into bankruptcy and did not satisfy" the settlement, however. (*See id.* at 46.)

On May 8, 2013, the Circuit Court of Cook County, Illinois, placed Insurer into liquidation, enjoining any actions outside the liquidation proceedings against it or Receiver. (*See* doc. 17 at 6-16.) Between August 13, 2013, and Spring 2020, Plaintiff submitted claims for the unpaid settlement and allegedly sent Receiver proof of his employment with Employer 1, but his claim

---

[3] Plaintiff was sent two magistrate judge's questionnaires (MJQ) to obtain more information about his claims, and he filed his verified answers under penalty of perjury on May 3, 2021 and May 12, 2021. (*See* docs. 8, 14.)

was denied several times for lack of proof of employment. (*See* doc. 3 at 17-18, 27-29, 34-52; doc. 21 at 3, 10.)

On April 22, 2021, Plaintiff filed this lawsuit against Receiver. (*See* doc. 3.) The one-page complaint, accompanied by 59 pages of attachments consisting of statements, correspondence, and emails, states:

> I was working at Executive Transportation but the debt is still unpaid. I won a settlement. Now Grayline Tours of Dallas/Ft Worth say there is no records that I were ever an employee of this Insured I have proof of claim I have a W2 Form that show I worked there. Why would a company deliberately to conspiracy to destroy an employee record, and I like to file a suit and file a lien additional Information of Affidavits may be attached.

(*See id.* at 1-60.)[4] Also attached is a standard civil cover sheet, in which Plaintiff checked the box for "U.S. Government" as the plaintiff, and the following boxes for "Nature of Suit": 110 Insurance, 365 Personal Injury – Product Liability, 440 Other Civil Rights, and 790 Other Labor Litigation. (*See id.* at 61.) He separately listed the federal statutes under which he is suing as "Code 110, 442 [Employment], 422 [No such code], 718 [No such code], 895 [Freedom of Information Act] and 790 (Rev 10-20). (*See id.*) While the specific causes of action he seeks to assert are unclear, he does expressly seek to impose a lien on an undisclosed property to secure either $20,260.00 or $26,000 for the unpaid settlement and $548.00 for "repair and labor." (*See* doc. 3 at 1, 27-28, 58-59; doc. 8 at 2, 5-6; doc. 10; doc. 14 at 2-3; doc. 17; doc. 21 at 7.) In his MJQ answers and subsequent amendments to his complaint, Plaintiff also named Insurer as a

---

[4] Some of the attachments contain, in relevant part, statements that Plaintiff is looking for an attorney to handle "a 3 decades ago case for" him, including: "worker's compensation, personal injury and other"; "Criminal Law, Employment Law, Personal Injury, Bankruptcy, Chapter 7, Chapter 13 and or Worker's Compensation cases . . . as well as Preserve the Constitutional Rights that I deserve"; and "worker's comp, criminal personal injury, conpensation [sic] for [his] hernia and bank injury and [his] constitutional right." (*See* doc. 3 at 2, 8, 30.) His claim form to the Receiver appears to allege that he was terminated on the basis of race. (*See id.* at 22.)

defendant and made the same type of allegations against it that he made against Receiver. (*See* doc. 8; doc. 10; doc. 14; doc. 17.)[5]

On June 24, 2021, Defendants filed identical answers and motions to dismiss under Fed. R. Civ. P. 12(b)(1)-(2), or in the alternative, motions to abate and dismiss. (*See* docs. 18-19.) In his response, filed on July 7, 2021, Plaintiff specifically sought a judgment lien under 28 U.S.C. § 3201 and alleged that his damages "will come over of $87,000.00" due to 10% annual interest on the unpaid 1995 settlement. (*See* doc. 21 at 6-7.)[6] Defendants replied on July 27, 2021, and Plaintiff filed a sur-reply without leave on December 9, 2021, in which he lists additional statutes as bases for his lawsuit. (*See* docs. 22-24).[7]

## II.    SUBJECT MATTER JURISDICTION

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (*See* docs. 18 at 3; 19 at 3.)

---

[5] Plaintiff's response to the first MJQ contended that Employer 1 "allegedly violated criminal laws, fraud against the U.S government on their law bills, the labor law, personal Injury, Worker's Compensation, Chapter 7 and Chapter 13 law", and he makes similar claims against Insurer. (*See* doc. 8 at 2, 5.) His response to the second MJQ lists "employment law, labor law, personal injury, worker's compensation" as the federal law or constitutional provisions that Defendants allegedly violated. (*See* doc. 14 at 3.)

[6] Plaintiff's response twice lists codes from the civil cover sheet: "The Nature of Suit or lien Codes 110, 360, 440, 365, 370, 375, 710, 790, 870" and "(710) Fair Labor Standard Act, (550) Civil Rights, (442) Employment, and (110 Insurance Act, (370) Other Fraud, (364 Personal Injury, and (360) other Personal Injur [sic]." (*See* doc. 21 at 3, 14.) It alleges Defendants "violated criminal laws, Fraud against The U.S government on Their law Bills The Labor Law, Personal Injury, worker's compensation chapter 7 and chapter 13 laws, Insurance, Fraud on claimact [sic], Tax law," and claims "wrongful termination, worker's compensation claims, on the job Injuries." (*See id.* at 6-7, 14.) It also lists specific federal statutes: "(28) U.S.C. $ 3103(b); (28) U.S.C. $ 754"; "31 USC $ 3713(b)." (*See id.* at 9.)

[7] Plaintiff's sur-reply alleges violation of the Thirteenth Amendment, including "Involuntary Servitude labor No pay," "Peonage Penal Code Free Labor by Reconstruction in compelled to labor without make, medicare 18 U.S.C. Chi 77 Peonage Labor, 18 US Code Chapter 77, 18 US Code & 1581 Peonage Obstructing Involuntary servitude 13th amendment involuntary, 18 U.S.C. 1594, 1591, 1584, 1583, Title 18-8602, Circular No. 3591 and liquidation of obligation." (*See* doc. 24 at 1-2.)

A motion under Rule 12(b)(1) "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

5

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendants' motions to dismiss for lack of subject matter jurisdiction rely solely on Plaintiff's pleadings, which consist of his original complaint with attachments,[8] his amendments to the original complaint, his MJQ answers,[9] his response to the motion,[10] and his sur-reply.[11] (*See*

---

[8] The attached civil cover sheet, (*see* doc. 3 at 61), is not a part of the pleadings, however. *See Pesole v. Health Care Serv. Corp.*, 277 F. Supp. 3d 866, 872 (N.D. Tex. 2017), *dismissed*, No. 17-11269, 2017 WL 9250041 (5th Cir. Dec. 7, 2017) (stating that the civil cover sheet is not a part of the pleadings) (citation omitted).

[9] Plaintiff's MJQ answers constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[10] Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012). As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court. *See Hearn v. Deutsche Bank Nat'l Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged claim should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) ("The district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). Plaintiff's claims and allegations in his response to Defendants' motions to dismiss are therefore construed as a motion to amend, the motion is granted, and any new claims and allegations are considered.

[11] Plaintiff's sur-reply also raised new claims and allegations. (*See* doc. 24 at 1-3.) The Local Civil Rules do not contemplate sur-replies. *See Comstock v. City of Balch Springs*, No. 3:17-CV-344-B, 2017 WL 2791113, at *1 (N.D. Tex. May 18, 2017). "[S]ur-replies are 'highly disfavored' and are permitted only in 'exceptional or extraordinary circumstances.'" *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, No. 4:03-CV-1384-Y

docs. 3 at 1-60; doc. 8 at 1-3, 5-10; 10 at 1; 14 at 2-4; 17 at 1-16; 21 at 1-14; 24 at 1-3.) The motions therefore present a facial attack that do not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

A. **Diversity Jurisdiction**

Defendants contend that diversity jurisdiction is lacking because Plaintiff has not met the amount in controversy element. (*See* doc. 18 at 3; 19 at 3.)

Diversity jurisdiction is proper only when complete diversity exists between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(a). The amount in controversy includes all damages available under the law governing the suit. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254-55 (5th Cir. 1998) (citation omitted). "The sum claimed by a plaintiff controls the court's 'amount in controversy' analysis, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 607 (N.D. Tex. 2006) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *St. Paul Reinsurance Co.*, 134 F.3d at 1253; *Allen v. R & H Oil & Gas Company*, 63 F.3d 1326, 1335 (5th Cir. 1995)). The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it. *St. Paul Reinsurance Co.,* 134 F.3d at 1253.

---

(N.D. Tex. Sept. 29, 2015) (citing *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)). A sur-reply is appropriate only when the movant attempts to present new evidence at the reply stage and the respondent seeks leave of court to file one. *Brackens v. Dallas Indep. School Dist.*, No. 3:09-CV-642-D, 2010 WL 5464823, at *5 (N.D. Tex. Sept. 20, 2010). Here, Defendants did not reply with new evidence and Plaintiff did not seek leave of court to file his sur-reply. (*See* docs. 22-24.)  Like those in his response, the new claims and allegations in his sur-reply have been construed as a motion for leave to amend, granted, and considered. *See Matter of Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (citation omitted) ("Courts have broad discretion in interpreting and applying their own local rules adopted to promote efficiency in the court.")

Here, Plaintiff's pleadings state that he is seeking to recover monetary damages in the amount of $20,260.00, or $26,000, for the unpaid settlement and $548.00 for "repair and labor." (*See* doc. 3 at 1, 27-28, 58-59; doc. 8 at 5-6; doc. 10; doc. 14 at 2-3; doc. 17; doc. 21 at 7.) His response to the motions to dismiss concedes that he "seek[s] to recover [] $26,000" but contends that his claim will exceed the jurisdictional amount because of the 10% interest he seeks for his "29 year case that will come over of $87,000 today." (*See* doc. 21 at 6.) His request for 10% interest over "3 decades" was set out in his prior pleadings. (*See* doc. 3 at 27; doc. 8 at 9.)

As noted, for purposes of diversity jurisdiction, the amount in controversy must "exceed[] the sum or value of $75,000, *exclusive of interest* and costs." 28 U.S.C. § 1332 (emphasis added). "Interest is only considered for jurisdictional purposes where it is a basis for the suit itself." *See Danial v. Daniels*, 162 F. App'x 288, 290-91 (5th Cir. 2006) (finding calculation of and reliance on interest to meet the jurisdictional amount "creative" but "without merit") (citing *Brown v. Webster*, 156 U.S. 328, 330 (1895) and distinguishing *Greene County v. Kortrecht*, 81 F.241 (5th Cir. 1897) (holding that interest on a note prior to maturity would be properly considered for jurisdictional purposes, but not interest accruing after maturity)). As explained in *Muddu Oils Refinery Ltd. v. Dykes*, No. 4:06-CV-825-BE, 2007 WL 894568, at *2 (N.D. Tex. Mar. 26, 2007),

> Interest that is an integral part of the claim, such as interest owed as part of a contractual obligation and exacted as the agreed upon price for the hire of money, becomes part of the principal for jurisdiction purposes. *See Brainin*, 396 F.2d at 153-54; *Greene County v. Kortrecht*, 81 F. 241, 241 (5th Cir.1897); *Roberts*, 237 F.Supp.2d at 698. Conversely, interest serving as damages for the detention of money or delay in payment must be excluded when calculating the amount in controversy. *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir.1979); *Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir.1962); *Albani v. D & R Truck Serv., Inc.*, 248 F.Supp. 268, 270-71 (D.Conn.1965).

Statutory interest has also been included in the amount in controversy when "intended to be in the nature of a coercive penalty," such as the "statutory damages of 18 percent per annum under the

Texas Insurance Code." *See St. Paul Reinsurance Co., Ltd.*, 134 F.3d at 1255 (applying *Buras v. Birmingham Fire Insurance Co. of Pennsylvania*, 327 F.2d 238, 238-39 (5th Cir. 1964)).

Plaintiff identifies no contractual obligation that requires Defendants to pay interest, relying only on his settlement agreement with Employer 2 arising from his back injury in 1993. He has not quantified any losses or damages beyond the unpaid settlement and "repair and labor" to support a reasonable inference that the total amount for his damages is greater than $75,000. Nothing in his pleadings shows that the amount in controversy exceeds the jurisdictional amount or provides a good faith basis for a recovery of it. *See Diefenthal v. C. A. B.*, 681 F.2d 1039, 1051-54 (5th Cir. 1982) (affirming dismissal for lack of diversity jurisdiction where plaintiffs failed to provide facts to support their amount in controversy claim). Because it appears from his pleadings to a legal certainty that his claim is for less than the jurisdictional amount, Plaintiff has not met his burden to show that diversity jurisdiction exists.

## B. Federal Question Jurisdiction

Defendants contend that federal question jurisdiction is lacking because Plaintiff raises only state law claims. (*See* docs. 9 at 3-4; 18 at 3-4.)

Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. It exists only when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal question is presented when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duan Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008). To determine whether resolution of a substantial question of federal law is necessary, courts must determine

whether "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.* at 338. The party invoking federal question jurisdiction bears the burden of establishing its existence. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

Plaintiff's original complaint did not identify any cause of action. (*See* doc. 3 at 1.) Despite his attempt to identify causes of action on the civil cover sheet, as previously noted, it is not a pleading. *See Pesole*, 277 F.Supp.3d at 872. Simply checking boxes on that form to indicate the nature of suit and listing statutes, without supporting factual allegations, is insufficient to create a federal question for purposes of subject-matter jurisdiction. *See Boone v. Wilson*, No. 3:18-CV-2072-D, 2018 WL 9988322, at *1 (N.D. Tex. Aug. 27, 2018) (citing *Pesole*); *see also Jermany v. U.S. Postal Service*, No. 3:11-CV-3468-D, 2012 WL 3758163, at *3 (N.D. Tex. July 30, 2012) (recommending dismissal of claim under box checked on civil cover sheet where complaint did not assert cause of action or any facts in support), *recommendation adopted*, 2012 WL 3758511 (N.D. Tex. Aug. 30, 2012); *Wells v. Womens Clinic of Shreveport*, No. CIV A 06-1371, 2006 WL 2883039, at *1 (W.D. La. Sept. 1, 2006) (finding that "mere reference" to a federal statute on the civil cover sheet "falls in the category of a claim that 'appears to be immaterial and made solely for the purposes of obtaining jurisdiction or [the] claim is wholly insubstantial and frivolous.'") (quoting *Williamson*, 645 F.2d at 415); *Haskell v. Dallas Independent School Dist.*, No. 3:02CV0827-N, 2003 WL 21355956, at *1 (N.D. Tex. June 6, 2003) (granting motion to dismiss for lack of subject matter jurisdiction where complaint failed to allege facts supporting relief under the federal statute listed in the civil cover sheet). Likewise, checking the box for the U.S. Government as the plaintiff on the civil cover sheet has specifically been found insufficient to

establish federal question jurisdiction. *See Salazar v. Fieg*, No. 3:21-CV-1606-E-BK, 2021 WL 4312636, at *2 (N.D. Tex. Sept. 7, 2021), *recommendation adopted*, 2021 WL 431-591 (N.D. Tex. Sept. 22, 2021); *Isom v. Texas Department of Transportation*, No. 3:21-CV-1350-B-BK, 2021 WL 3434993, at *2 (N.D. Tex. July 15, 2021) (citations omitted), *recommendation adopted*, 2021 WL 3421415 (N.D Tex. Aug. 5, 2021).

As for the references to federal statutes in his actual pleadings, the assertion of federal question jurisdiction "must be more than incantation." *Murphy v. Inexco Oil Co.*, 611 F.3d 570, 573 (tth Cir. 1980). "[T]he 'pleading of federal jurisdiction requires more than a simple allegation that jurisdiction exists or citation of a federal statute ... [it requires] that the complaint clearly set out the basic facts necessary to support the conclusion' that federal jurisdiction does in fact exist." *Gilbeaux v. Univ. of Texas Med. Branch*, 42 F.Supp.2d 637, 641 (E.D.Tex.1998) (finding citation to a federal statute in the heading of a court designed complaint form insufficient to invoke federal jurisdiction) (quoting *Fountain v. New Orleans Pub. Serv., Inc.*, 265 F.Supp. 630, 632 (D.C.La.1967)); *see also Isom*, 2021 WL 3434993, at *2 (finding that "fleeting mention" of federal statutes did not establish federal question jurisdiction); *Olmstead v. Wright*, No. 5:20-CV-047-H-BQ, 2020 WL 4615174, at *5 (N.D. Tex. May 15, 2020) (citations omitted) (finding that "[m]ere citation to a constitutional amendment or federal statute will not raise a federal question" and noting that the complaint alleged no facts "even hinting at a viable claim" under the referenced federal statutes), *recommendation adopted*, 2020 WL 4596771 (N.D. Aug. 11, 2020); *Kahclamat v. Nash*, No. 3:18-cv-464-G-BN, 2018 WL 1515126, at *2 (N.D. Tex. Mar. 6, 2018) (finding that "the mere mention of federal law or bare assertion of a federal claim is not sufficient to obtain federal question jurisdiction, because 'federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely

devoid of merit; wholly insubstantial; obviously frivolous; plainly unsubstantial; or no longer open to discussion.'") (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)), *recommendation adopted*, 2018 WL 1513655 (N.D. Tex. Mar. 27, 2018).

Plaintiff alleges no facts that would support a claim against Defendants under any of the various federal statutes he lists. The specific factual allegations against them appear confined to the denial of his claim for payment of the 1995 settlement with his former employer. When asked why this case belonged in federal court, Plaintiff responded:

> I like for my case to be handled at federal court cause my old job are doing a lot of fraud and it need to be known to the U.S. government and the whistleblower should know about it. [Insurer] and [Receiver] is two large carrier and related to companies you may know for wrongly denying claims. We or victims of cybercrime by big insurance it need to stop and I like to see what the federal court can do.

(*See* doc. 8 at 7.) The face of his pleadings does not establish that federal law creates any cause of action which he seeks to assert, or that his right to relief depends on resolution of a substantial question of federal law. He has failed to meet his burden to show federal question jurisdiction.

In conclusion, Defendants' motions under Fed. R. Civ. P. 12(b)(1) should be granted for lack of subject matter jurisdiction.

## C. <u>Motion to Abate</u>

Although titled as alternative motions to abate, Defendants actually seek abstention and dismissal under the McCarran-Ferguson Act[12] and *Burford* abstention doctrine.[13] Because subject

---

[12] "Congress enacted the McCarran–Ferguson Act, 15 U.S.C. § 1101, *et seq.*, for the specific purpose of consigning to the States broad and primary responsibility for regulating the insurance industry." *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 589 (5th Cir. 1998) (citation omitted).

[13] Under this doctrine, named after *Burford v. Sun Oil*, 319 U.S. 315 (1943), is appropriate in two circumstances: "(1) cases involving difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case, or (2) where federal adjudication of the case would disrupt state efforts to establish a coherent policy with respect to matters of substantial public importance." *See Munich Am. Reinsurance Co.*, 141 F.3d at 589 (citation omitted).

matter jurisdiction does not exist over this case, Defendants' alternative motions should be denied as moot. *See Arencibia v. AGA Serv. Co.*, No. 4:20-CV-00819-O, 2020 WL 10056799, at *7 (N.D. Tex. Nov. 13, 2020) (concluding that it is unnecessary to reach defendant's argument that plaintiff's claim is barred by the McCarran-Ferguson Act because it is subject to dismissal).

### III.     PERSONAL JURISDICTION

Defendants also move to dismiss this action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (*See* docs. 18 at 8; 19 at 8.)

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); Tex. Civ. Prac. & Rem. Code § 17.041 *et seq*. "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (quotations omitted). It is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, no evidentiary hearing is conducted, the plaintiff need only make a prima facie showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The plaintiff's uncontroverted factual allegations in the complaint must be accepted as true, and all factual disputes must be resolved in his favor. *Alpine View Co., Ltd.*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Courts are not

required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869.

## A. General Jurisdiction

Defendants dispute the existence of general jurisdiction because they "do[] not have minimum contacts with Texas," and neither is incorporated or has its principal place of business in Texas. (*See* docs. 18 at 8; 19 at 8.)

As noted, a court may assert general jurisdiction over a nonresident defendant when its contacts are substantial, continuous, and systematic. *Central Freight Lines Inc.*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414). As reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Systems Int'l. Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008). In determining whether general jurisdiction exists, courts do not examine a nonresident's contacts with the forum state in isolation from one another but rather "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required .... [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (quoting *Johnston*, 523 F.3d at 609-10).

Here, Plaintiff's response contends for the first time that Insurer has its principal place of business in Texas because he worked for employers in Texas who were insured by it. (*See* doc. 21 at 12.) His pleadings contain no allegations showing that Insurer is "at home" in Texas, or any allegations regarding any contacts with Texas, however. (*See* docs. 3, 8, 10, 17, 21.) He may not rely on his employers' presence in Texas for purposes of determining whether personal jurisdiction over Insurer exists because aggregation of contacts is improper. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (holding that it is improper to aggregate the forum contacts of defendant parties in deciding whether to exercise personal jurisdiction).

As for Receiver, Plaintiff alleges that jurisdiction exists over it under *United States v. Crocker*, 313 F.2d 946 (9th Cir. 1963), because a court appointment "does not make the receiver immune from liability." (*See* doc. 21 at 10.) His argument confuses liability with personal jurisdiction. His pleadings contain no allegations regarding any contacts by Receiver with Texas, or any facts showing that Receiver is "at home" in Texas. (*See* docs. 3, 8, 10, 17, 21.) Any reliance on Insurer's alleged contact with Texas for purposes of determining whether personal jurisdiction over Receiver exists is also improper. *See Rush*, 444 U.S. at 332.

Because his pleadings do not allege facts showing that Defendants had contacts with Texas that were so "continuous and systematic" as to deem them "at home" in Texas, Plaintiff has not made a prima facie showing of general jurisdiction over them. *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 922.

**B.  Specific Jurisdiction**

Specific jurisdiction over a non-resident defendant exists when a plaintiff's claims against the defendant arise out of or relate to activities that the defendant purposefully directed at the forum state. *Burger King Corp.*, 471 U.S. at 472. The specific jurisdiction analysis "focuses on 'the

relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin*, 587 F.3d at 759.

Plaintiff alleges that jurisdiction exists over Insurer on grounds that it is "subject to the laws and regulations of the state in which the policy was issued," and that it issued a policy to his employers in Texas, where they were located and where they insured him. (*See* doc. 21 at 2, 5, 8.) His pleadings allege no facts showing that it engaged in any business in Texas, or specifically targeted Texas customers or businesses that were based or operated in Texas, however. While he claims that Receiver has the power "to act across state borders, wherever assets are located" and the "statutory authority" to take title, immediate possession, and control of Insurer's property, contracts, and rights of action, (*see* doc. 21 at 8-9), a receiver's "statutory authority" does not supplant the jurisdictional requirement. Plaintiff has not asserted any facts showing that Receiver had any business or other relationship within Texas. He relies only on its repeated denial, during its oversight of Insurer's receivership proceedings, of his claim against Insurer based on a 1995 settlement agreement with his employer in Texas. Plaintiff has failed to make a prima facie showing of specific jurisdiction against Defendants.[14] *See Burger King*, 471 U.S. at 475.

Because he failed to meet his burden, Defendants' motions to dismiss for lack of personal jurisdiction should be granted.

---

[14] Because Defendants do not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996).

## IV.     RECOMMENDATION

Defendants' motions to dismiss under 12(b)(1) and (2) should be **GRANTED**, and all of Plaintiff's claims against them should be **DISMISSED without prejudice** for lack of subject matter and personal jurisdiction. Defendants' motions to abate should be **DENIED as moot.**

**SO RECOMMENDED** on this 14th day of February, 2022.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE